UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARITO RAMIREZ ROJAS, an individual, on behalf of himself, and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BARNARD CONTRUCTION,[1] a Montana corporation; BARNARD CONSTRUCTION COMPANY, INC., a Montana corporation; and Does 1 through 100, Inclusive,<br><br>Defendants. | Case No.: 22-cv-00533-AJB-KSC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR REMAND**<br><br>**(Doc. No. 6)** |

Before the Court is Margarito Ramirez Rojas's ("Plaintiff") motion for remand. (Doc. No. 6.) Barnard Construction Company, Inc. ("Defendant") filed a response to Plaintiff's motion, to which Plaintiff replied. (Doc. Nos. 10, 11.) Having considered the

---

[1] The Notice of Removal contains a spelling of this company's name that is different from that used in the Complaint and First Amended Complaint ("FAC"). As the spelling in the Notice of Removal appears to be a typographical error, the Court uses the spelling used in the complaints. (*Compare* Doc. No. 1 at 1 ("CONTRUCTION"), *with* Doc. No. 1-2, Compl. at 5 ("CONSTRUCTION"), FAC at 39 (same).)

1

22-cv-00533-AJB-KSC

parties' moving papers and for the reasons set forth below, the Court **DENIES** the motion for remand.

## I. BACKGROUND

Plaintiff was a non-exempt employee of Defendant from November 2020 through November 2021. (Doc. No. 1-2 at 40.)[2] Plaintiff's duties included manipulating gravel, dirt, and other materials, and removing construction and fencing materials. (*Id.* at 40–41.) On October 20, 2021, Plaintiff filed suit against Defendant in Imperial County Superior Court, asserting claims on behalf of himself and putative class members of similarly situated non-exempt employees employed by Defendant in California. (*Id.* at 4–5.)

On January 3, 2022, Plaintiff filed a First Amended Complaint ("FAC"). (*Id.* at 39.) The FAC contains ten causes of action under California law: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to pay all wages due upon termination; (6) failure to provide accurate wage statements; (7) failure to pay timely wages during employment; (8) violation of California Labor Code section 227.3; (9) unfair competition; and (10) civil penalties under the Private Attorneys General Act for violations of the California Labor Code. (*Id.*)

Defendant filed an Answer to the FAC on March 7, 2022 and removed the action to federal court on April 18, 2022, asserting diversity jurisdiction over this case pursuant to the Class Action Fairness Act ("CAFA"). (Doc. Nos. 1, 2.) Plaintiff thereafter filed the instant motion to remand, arguing that Defendant's removal was untimely, and that Defendant failed to establish that the amount-in-controversy requirement under CAFA is met. (Doc. No. 6 at 10.) This Order follows.

## II. LEGAL STANDARD

CAFA gives federal courts jurisdiction over certain class actions if the class has (1) at least 100 members, (2) the parties are minimally diverse, and (3) the

---

[2] The pinpoint page citations refer to the ECF-generated page numbers at the top of each filing.

amount-in-controversy exceeds $5 million. *See* 28 U.S.C. § 1332(d)(2), (5)(B); *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). An action that meets CAFA standards may be removed to federal court. *See* 28 U.S.C. § 1441(a). Unlike the general presumption against removal, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Even in CAFA cases, however, the burden of establishing removal jurisdiction, remains on the defendant seeking removal. *See Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011).

If the defendant's notice of removal was untimely, a plaintiff may move to remand the case back to state court. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010). The timeliness of removal is governed by 28 U.S.C. Section 1446(b), which identifies two thirty-day periods for removing a case. *Id.* The first is triggered "if the case stated by the initial pleading is removable on its face." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). The second is triggered "if the initial pleading does not indicate that the case is removable, and the defendant receives 'a copy of an amended pleading, motion, order, or other paper' from which removability may first be ascertained." *Carvalho*, 629 F.3d at 885 (quoting 28 U.S.C. § 1446(b)(3)). "[D]efendants need not make extrapolations or engage in guesswork; yet the statute requires a defendant to apply a reasonable amount of intelligence in ascertaining removability." *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) (internal quotations omitted). A defendant may remove a case "outside the two thirty-day periods on the basis of [defendant's] own information, provided that it has not run afoul of either of the thirty-day deadlines." *Roth v. CHA Hollywood Med. Ctr, L.P.*, 720 F.3d 1121, 1124–25 (9th Cir. 2013).

### III.  DISCUSSION

In support of his motion to remand, Plaintiff argues that removal was untimely, and that Defendant has not shown the amount in controversy required under CAFA is met.

Defendant argues that removal was timely, and that Plaintiff's waiting time penalties alone satisfies CAFA's monetary threshold. The Court discusses the parties' arguments in turn.[3]

### A. Timeliness

First, the Court considers whether Defendant's removal was timely. Plaintiff contends that removal was untimely because both thirty-day periods for removal had passed by the time Defendant filed its Notice of Removal on April 18, 2022. (Doc. No. 11 at 2.) Defendant argues that removal was timely because neither removal period was ever triggered. (Doc. No. 10 at 12.)

As previously noted, the first thirty-day period for removal is triggered "if the case stated by the initial pleading is removable on its face." *Harris*, 425 F.3d at 694. Plaintiff asserts that the first removal period was triggered by, and expired 30 days after he filed, his Complaint in October 2021. (Doc. No. 11 at 2.) Defendant argues that the Complaint was not removable on its face. (Doc. No. 10 at 12.) The Court agrees.

The Complaint did not trigger the first thirty-day removal period because it did not affirmatively reveal information that would allow Defendant to ascertain that the parties were minimally diverse and that the amount in controversy exceeds $5 million. Plaintiff alleged only that he was a resident of Arizona; he did not allege his state of citizenship. (Doc. No. 1-2 at 5 ¶ 2). *See Harris*, 425 F.3d at 695. ("The face of Harris's initial pleading did not affirmatively reveal information to trigger removal based on diversity jurisdiction because the initial pleading only stated Brown's 1972 residency, not his citizenship, and certainly not his citizenship as of the filing of the complaint.") Plaintiff also did not specify an amount in controversy. Because the Complaint did not contain information from which Defendant could ascertain Plaintiff's citizenship or the amount in controversy, the Court does not find that the Complaint was removable on its face. Thus, Plaintiff's initial pleading did not trigger the first thirty-day removal period. *See id.* at 694.

---

[3] Plaintiff does not dispute Defendant's showing of CAFA's other requirements (minimum diversity and numerosity).

The second thirty-day period for removal is triggered when the defendant receives "a copy of an amended pleading, motion, order, or other paper' from which removability may first be ascertained." *Carvalho*, 629 F.3d at 885 (quoting 28 U.S.C. § 1446(b)(3)). Plaintiff contends that the second removal period was triggered by, and expired thirty days after he filed, his FAC in January 2022. (Doc. No. 11 at 2.) Defendant argues the FAC did not trigger the second removal period because it suffers from the same issues as the indeterminate Complaint. (Doc. No. 10 at 12.) The Court agrees.

Like the Complaint, the FAC does not state Plaintiff's state of citizenship or the amount in controversy. As the FAC lacks facts from which Defendant could ascertain removability, the Court finds the amended pleading did not trigger the second thirty-day removal period. *See Roth*, 720 F.3d at 1125 ("The FAC in this case was at best indeterminate. It did not reveal on its face that there was diversity of citizenship or that there was sufficient amount in controversy to support jurisdiction under CAFA.") (internal quotation and citation omitted).

Where, as here, neither of the thirty-day removal deadlines have been triggered, a defendant may remove a case "outside the two thirty-day periods on the basis of its own information." *Roth*, 720 F.3d at 1124–25. Defendant did just that. The company consulted its own employment files and determined that there are approximately 500 individuals who meet Plaintiff's proposed class definition, that Plaintiff was a citizen of Arizona, and that Plaintiff's claims amount to more than $5 million. (Doc. No. 1 at 7–11.) As neither thirty-day removal period was triggered in this case, Defendant was permitted to remove this case "at any time." *Roth*, 720 F.3d at 1126. Consequently, the Court does not find Defendant's removal untimely.

B.     **Amount in Controversy**

Second, the parties dispute whether CAFA's amount-in-controversy requirement is met. The Court thus considers whether Defendant has demonstrated, by a preponderance of evidence, that the amount in controversy exceeds $5 million.

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. "[T]he amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 87. If, however, the plaintiff challenges the defendant's allegations, "both sides submit proof and the court decides, by a preponderance of the evidence whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. A removing defendant cannot satisfy its burden "by mere speculation and conjecture, with unreasonable assumptions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id.* (internal quotations and citation omitted).

As earlier mentioned, Defendant argues that the amount in controversy exceeds $5 million based on Plaintiff's claim for waiting time penalties alone. (Doc. No. 10 at 13–20.) With respect to these claims, Plaintiff alleges that Defendant failed to pay Plaintiff and class members all wages earned prior to resignation or termination within 72 hours of resignation or termination, pursuant to Labor Code §§ 201 or 202. (Doc. No. 1-2, FAC at 55.) Plaintiff further alleges Defendant willfully failed to pay these wages by "intentionally adopted policies or practices incompatible with the requirements of Labor Code Sections 201 and 202[.]" (*Id.* at 56.) An employer's failure to timely pay wages owed pursuant to California Labor Code §§ 201 or 202 results in a penalty of the employee's wages for every day it is late, up to a maximum of thirty days' wages. *See* Cal. Labor Code § 203.

Defendant approximates that Plaintiff's claim for waiting time penalties amount to over $6 million and submitted declarations from its counsel and Vice President ("VP") of Finance in support of its calculation. (Doc. Nos. 10-1, 10-2.) Defendant arrived at its estimate by assuming at least one wage and hour violation giving rise to waiting time penalties. The VP of Finance analyzed the company's business records, and based thereon, identified the number of class members who separated from employment during the limitations period for waiting time penalties (525) and the average daily wage for class

members ($415.23). (Doc. No. 10-2 at 3–4.) Defendant multiplied those figures by the thirty-day maximum for waiting time penalties for a total of $6,539,872.50 (525 class members x $415.23 average daily wage x 30 maximum days).[4]

Plaintiff asserts three problems with Defendant's calculations: (1) Defendant assumes a 100% violation rate, which contradicts the limiting language of both the Complaint and the FAC; (2) Defendant's identification of the number of terminated employees is mere speculation; and (3) Defendant improperly pushes onto Plaintiff its burden to prove the amount in controversy. (Doc. No. 11 at 6, 8–10.) The Court disagrees.

First, Defendant did not assume a 100% violation in calculating the waiting time penalties above. The VP of Finance identified the full class size to be 567 employees. (Doc. 10-2 at 2.) Defendant calculated the waiting time penalties using only the number of class members the VP of Finance determined to have been separated from employment by the end of the class period, which was 525 employees. (*Id.* at 3–4.) This is not the full class size, and thus, not a 100% violation rate. Even if Defendant did use a 100% violation rate, other district courts have concluded that allegations of the willful failure to timely pay final wages (based on alleged overtime and meal and rest break violations) were sufficient to support estimations of waiting time penalties at a 100% rate. *See, e.g.*, *Ford v. CEC Entm't, Inc.*, No. CV 14-01420 RS, 2014 WL 3377990 (N.D. Cal. July 10, 2014) ("Assuming a 100% violation rate is thus reasonably grounded in the complaint . . . Because no averment in the complaint supports an inference that these sums were ever paid, Ford cannot now claim class members may be awarded less than the statutory maximum.").

Second, with respect to Plaintiff's challenge to Defendant's method of identifying the number of terminated employees, the Court notes that a defendant may make assumptions in its calculations so long as they are reasonably grounded. *Ibarra*, 775 F.3d at 1197. Here, the VP of Finance detailed in his declaration the basis for his calculation.

---

[4] The Court notes Defendant's brief and counsel's declaration miscalculated the total to be "$6,539,825.75." (Doc. Nos. 10 at 15, 10-1 at 2.) This miscalculation, however, is inconsequential as the correct total still exceeds the jurisdictional threshold.

(Doc. No. 10-2 at 3–4.) He explained that because the employee data he reviewed did not include termination dates for the class members, he set a 42-day threshold to determine the number of terminated employees. (*Id.*) In other words, he assumed that "[a]ny employee who did not receive a paycheck in the last 42 days of data (March 7, 2022 – April 18, 2022)" was terminated. (*Id.* at 4.) To account for his use of a 42-day threshold, the VP of Finance explained that based on his experience, "it is extremely likely (~95% or more) that an employee who does not receive a paycheck for a six-week period has separated employment." (*Id.*) As Defendant's calculations are based on its VP of Finance's experience with and analysis of employee records, the Court finds them reasonably grounded. *See Ibarra*, 775 F.3d at 1199 ("A damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air, but need some reasonable ground underlying them.").

Finally, Plaintiff does not offer any alternative calculation for waiting time penalties. While the burden of proof rests with Defendant, "if [the] defendant's asserted amount in controversy is challenged, 'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.'" *Ibarra*, 775 F.3d at 1197. Plaintiff has not rebutted Defendant's evidence nor has Plaintiff provided any evidence to suggest that the payments were ever provided. Thus, the Court finds Defendant's asserted amount in controversy of $6,539,872.50 for waiting time penalties proper here.

## IV.   CONCLUSION

Based on the foregoing, the Court finds that removal was timely, and Defendant has satisfied its burden to demonstrate the amount-in-controversy requirement under CAFA is met. Accordingly, the Court **DENIES** Plaintiff's motion to remand. (Doc. No. 6.)

**IT IS SO ORDERED**.

Dated:  November 9, 2022

Hon. Anthony J. Battaglia
United States District Judge